Adams, J.
There are three cases, Lewis, auditor, v. Symmes’ heirs, and the same plaintiff in error against Taylor, and the same plaintiff in error against the Cincinnati, Portsmouth & Virginia Railroad Company, that were argued and submitted to the court together because they involved almost iden *445 tical questions, and they will be disposed of together.
These three cases are here on error, and defendants in error, plaintiffs below, sought by their respective petitions in the court of common pleas to enjoin the collection of certain assessments put on their respective properties by the commissioners of Hamilton county in the construction of what is known in these cases as Columbian avenue, under the act of the general assembly of Ohio of April 12, 1893, found in 90 Ohio Local Laws, 217
That this act of the general assembly was and is unconstitutional is substantially admitted by counsel for plaintiff in error. We think that it is unconstitutional is established by the decision of the supreme court in the case of Hixson v. Burson, 54 Ohio St., 470, overruling the second paragraph of the syllabus in the Hibbs case in 35 Ohio St., 458. Also by the decision of the supreme court in State v. Commissioners, 54 Ohio St., 333.
The answer of the auditor in the Symmes case admits many, if not all, of the allegations .of the petition, and among other things admits that one of the plaintiffs, Anna H. Symmes, demanded $500 as compensation for the land of hers actually taken for the purposes of the improvement, and that she received therefor from the commissioners $200. That Kate Hart, the other plaintiff, demanded $2,100 for her land actually taken, and received $830.
It is also admitted as set out in the petition that these lands were under lease to one Tilden B. French for a term of five years from February 28, 1893, to February 28, 1898, and that in his lease French agreed to pay the taxes and assessments that might be made against the property; and that these assessments were made on June 9, 1897, during the lifetime of that lease.
It is alleged in all these answers that these respective plaintiffs had knowledge that this improvement was to be made, and knowledge that the assessment was to be made upon the property in accordance with the act, They allege *446 that the improvement is a benefit to the property within Hamilton county, and a special benefit to the property of plaintiffs.
There is a further allegation that if the act was unconstitutional, that the plaintiffs below knew of its unconstitutionality.
In the court below demurrers were sustained to these answers, and judgments rendered accordingly.
The Taylor case differs from the other two cases in that none of the Taylor lands touch the avenue; none of them abut or border on the improvement. And in the Taylor case a written protest was filed with the county commissioners objecting to the making of the improvement and to assessing any part of the costs on the Taylor property.
In the railroad case it is alleged that a part of the lands the railroad company bought from a man by the name of Morton, and in their deed they agreed to pay assessments.
On the facts contained in these answers counsel for plaintiffs in error claim that the defendants in error are estopped.
We may say here before we go to the discussion of the merits of the questions argued by counsel for plaintiffs in error on the question of estoppel, that the claim is made broadly here that up until the decision of the supreme court in Hixson v. Burson, under the prior decision of the supreme court in the Hibbs case, 85 Ohio St., 458, that this act and similar acts yyere constitutional under the decision of the supreme court of the state. Now, how it is possible for a party, whether a lawyer or not, to know that an act is unconstitutional when the supreme court has held that a similar act, one exactly like it, is constitutional, is a matter that this court is not able to determine. Probably it is one of those questions which Judge Shauck says can only be answered by a court of last resort. 56 Ohio St., 396.
We think that the allegation of knowledge of the unconstitutionality of an act which the supreme court has held to *447 be constitutional is not an allegation of fact, and is not admitted by demurrer. And we think that that matter is important when we come to the consideration of the question of estoppel under the decisions of the supreme court of Ohio.
In addition to the claims of estoppel under our Ohio decisions, counsel for plaintiff in error claims that as the Columbian avenue act was constitutional under the decision of the supreme court in Hibbs v. Commissioners of Franklin county, 35 Ohio St., 458, which was decided in 1880, that the county commissioners and other parties had a right to rely on the constitutionality of this statute and similar statutes, and that any act or acts done prior to the different decision by the supreme court should not be affected or rendered void by a subsequent decision of the supreme court reversing its former holding, and holding that the same or similar statutes were unconstitutional.
Counsel has cited us to a number of authorities. The chief ones are cases decided by the supreme court of the United States, and I read from Green County v. Conness, 109 U. S., 104:
“The court adheres to its former rulings in regard to the liability of municipal corporations to innocent holders of the bonds of such corporations issued in aid of railroads. Douglass v. Pike County, 101 U. S., 677.
“The rights of such holders are to be determined by the law as it was judicially construed to be when the bonds were put on the market as commercial paper.”
And again from the 116 U. S., 356:
“When, at the time of creating and issuing a negotiable evidence of indebtedness of a municipal corporation in a state, the highest court of a state has construed the law under which it purports iq be issued, rights accruing under that construction will not be affected merely by subsequent decisions of the same court., varying or departing from it.
“When negotiable evidences of indebtedness of a munic *448 ipal corporation in a state axe created and issued under laws which have not, at the time of issue, been construed by the highest court of the state, its subsequent construction of them is not conclusive on federal courts, although they will lean to an agreement of views with the state court.”
Counsel has also cited us to cases in 1 Wall., 175; 16 Wall., 178; 33 Pa, St., 455; 51 Ala., 151, and other cases.
It must be, and was, conceded in the argument, that none of these cases are exactly like the case at bar. Those' decided by the supreme court of the United States related to an issue of bonds or other evidence of indebtedness, and relate to contract rights. There are no contract rights between these parties. It might be said upon the strength of these decisions that the bonds issued by the commissioners of Hamilton county for the payment of the cost of this improvement would have to be paid when those bonds were in the hands of innocent purchasers who had relied upon the prior decision of the supreme court; but the county at large, and not special property owners, should bear the burdens imposed on the county by acts of its officers done under invalid acts of the legislature.
And again, we know of no decision of our supreme court that has ever held constitutional a law authorizing an assessment without regard to benefits.
An examination of section 2 of the act under consideration, at the top of page 218, 90 Ohio Local Laws, shows that the legislature required the commissioners of Hamilton county to assess one-half of the cost of this improvement upon certain lands found in certain sections in proportion to the acreage thereof, and without regard to value, and without regard to benefits.
We think that this alone would render this act unconstitutional, and without regard to the former decision in 35 Ohio St.
In the case of the Village of Norwood v. Baker, de *449 cided by the supreme court of the United States, the controversy arose in the village of Norwood in this county. The second paragraph of the syllabus says:
“Where a special assessment is in itself illegal, because it rests upon a basis that excludes any consideration of benefits to the property taxed, proof that it is in excess of benefits is not required, in a suit to enjoin its enforcement, as the only appropriate decree in such case is one enjoining the whole assessment leaving the local authorities to make a new one according to law.”
As to the question of estoppel: In the Symmes case we think that the lease to French makes no difference so far as this question is concerned; that that was a contract between the plaintiff below and French; that French agreed to pay assessments, and if these parties are ultimately compelled to pay these assessments, they would have a right to proceed against French to recover for the amount that they had paid. It in no way estops them from questioning or testing the validity of the assessment. And we think the same thing applies to the deed of the railroad company. The railroad company having agreed to pay assessments, the court in construing that contract would hold it to mean “legal and valid assessments”, and they would have the right to question and have determined by a competent court the validity of the assessment.
Counsel rely in the question of estoppel largely upon the case of Tone v. Columbus, 39 Ohio St., 281. The fifth paragraph of the syllabus of this case is as follows:
“Active participation in causing the improvement to be made will estop the party engaged therein from denying the validity of the assessment.”
It is not claimed in any of these cases that there was any active participation on the part of any of these parties in causing the improvement to be made, so that the estoppel does not arise, and is not claimed to have arisen under that portion of the syllabus. The court say further:
*450 “But to create an estoppel from silence merely, it must be shown that the owner had knowledge, 1., that the improvement was being made, 2., that it was intended to assess the cost thereof, or some part of it, upon his property; 3., that the infirmity or defect in the proceedings existed which he is to be estopped from asserting; and 4., it must appear that some special benefit accrued to his property from such improvement which it is inequitable under the circumstances, he should enjoy without compensation."
An examination of that case will show that the assessments complained of in that case were made under an act of the legislature that had been held in a prior case — 31 Ohio St., I think it was — 4o be unconstitutional. It is shown that in the case of Tone v. Columbus, Tone was estopped to question the constitutionality of the act in question because he had signed the petition for the improvement. The defects that Tone was relying on to enjoin the asssssments were certain defects in the proceedings of council after they got beyond the question of the constitutionality of the act. It appears in that case that the court of common pleas had sustained demurrers to the Tone petition and the cases submitted with ii, and the district court reserved the cases to the supreme court, and the supreme court, although it lays down this rule in regard to estoppel by mere silence, held that the petition stated a cause of action, and that the demurrers to the petition should have been overruled.
Judge Okey, while he concurs in the result of the decision, differs from his associates on the bench as to this rule of estoppel. So far as I know, and so far as this court is advised, this paragraph of the syllabus goes further on the question of estoppel than any other case of which we have knowledge, goes beyond the great weight of authority. The great weight of authority is that a man is not estopped unless by his acts or conduct he has induced the other party to change his condition to his disadvantage; and here is the doctrine laid down of mere silence.
*451 Inthe Agler case in 44 Ohio St., 485, the opinion on page 486, we think, lays down the true rule, and as it is a later decision than that in 39 Ohio St., we follow it. And it is to be noted that none of the judges who decided the case in 39 Ohio St. were on the bench when this case in 44 Ohio St. was decided.
“The finding of the court in this case is that Mary J. Agler was not a petitioner, and that she remained silent until the improvement was made and the bonds of the city for the payment of the same had been negotiated; yet that she had knowledge that the improvement was being made at the time thereof. It is also found that her property was benefited by the improvement to the extent of four dollars per front foot, and no more.
“We think the judgment in this case should be affirmed. The act under which the proceedings for the improvement were had was invalid, as held in State ex rel. v. Mitchell, 31 Ohio St., 592, and she was in no way a promoter of the same. There is nothing in her case to distinguish it from the decision in Wright, Treas., v. Thomas, 26 Ohio St., 346. Neither the city, in causing the work to be done, nor the contractor in doing it, were trespassers as to her, although the proceedings were invalid. The title to the street was in tLe city,and not in her. Its improvement was no injury to her, and she could not prevent it by any proceeding she could adopt, as she might have done had it been an improvement upon her own land. She was not called upon to do anything until steps were taken to make the assessment upon her property. This distinguishes the case from Kellogg v. Ely, 15 Ohio St., 64, and similar cases.”
The rule laid down by the supreme court there applies exactly, we think, to the situation of the Taylors; nor do we think that any different rule should be applied in the Symmes case because of the fact that the plaintiff below in that case had demanded and received compensation for the land actually taken. And the same applies to the railroad company.
We think that they in no way induced the construction *452 of this improvement; they in no way promoted it by the mere fact that they allowed or suffered the improvement to be made across their railroad without demanding compensation for the use of their property.
B. de V. Carroll, Symmes & Fox, Hollister & Hollister, Oliver B. Jones, F. H. Kinney, for Plaintiffs.
Wm. Rendings, F. F. Dinsmore, for Defendants.
For these reasons we think the judgment of the court below was right in all of these cases, and the judgments are affirmed.